UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHERRY A. WILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:16-CV-142-PPS-JEM |
| | ) |
| NANCY BERRYHILL,[1] Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Sherry Willis appeals the Social Security Administration's decision to deny her application for disability benefits. An administrative law judge found that Willis was not disabled within the meaning of the Social Security Act. Willis raises a number of challenges to this determination, but I conclude that the ALJ's decision was supported by substantial evidence.

**Background**

Willis applied for disability benefits alleging disability beginning in September 2012. [A.R. at 39.][2] Willis previously filed applications for disability benefits in February 2011, but on September 13, 2012, an ALJ found that Willis was not disabled,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as defendant in this suit.

[2] The administrative record is found in the court record at docket entry 11, and consists of 715 pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the Court's Electronic Case Filing page number.

and Willis did not appeal that decision. [A.R. at 39.] As such, the issue of Willis's disability prior to September 13, 2012 is barred by res judicata. 20 C.F.R. § 404.957(c)(1).

Willis was 48 years old at the time of her hearing before the ALJ. [A.R. at 48.] Willis last worked in January 2011 as a certified nursing assistant. [*Id.* at 498.] While working at her last job, a patient in a wheelchair ran over her right foot in January 2011. [*Id.* at 396-397.] Willis suffers from several physical and mental health issues, including an injury to her right foot, knee osteoarthritis, and psychological disorders. [*Id.* at 110.]

In recent years, Willis received medical treatment from a variety of sources. In 2011, after her foot injury, Dr. Thomas McGill, an orthopedic specialist, treated Willis's foot until June 2011, when he determined that Willis was at maximum medical improvement. [*Id.* at 389-398.] Starting in April 2012, when Willis complained of further foot and knee pain, nurse practitioner Susan Grace treated Willis. [*Id.* at 407-420.] In August 2012, Willis started seeing a psychiatrist, Dr. Prasad Babu, who assessed a mood disorder and an impulse control disorder, while ruling out bipolar disorder. [*Id.* at 489.] In December 2012, Dr. Gary Durak, a psychologist, examined Willis and assigned a Global Assessment of Functioning score of 55. [*Id.* at 503.] In January 2013, Dr. Ralph Inabnit examined Willis's knee and foot, diagnosing osteoarthritis. [*Id.* at 505-512.] Dr. Inabnit also conducted a neurological examination of Willis, though he did not identify any mental disorders. [*Id.* at 509.] In April 2013, Dr. James Hartson performed a left knee replacement surgery on Willis. [*Id.* at 537, 553.] In

June 2014, Dr. Inabnit examined Willis again after she complained of persistent back and knee pain. [*Id*. at 699-707.]

At the hearing in front of the ALJ in June 2014, Willis testified that her knee pain had worsened since her first hearing before an ALJ. [*Id*. at 111-112.] Willis testified that, while she can sit without pain, she experiences pain in her foot when she stands up. [*Id.* at 114-115.] Willis testified that she does not use a cane or assistive device, except for a TENS unit, which uses electrical currents to relieve muscle pain. [*Id*. at 116.] However, Willis also testified that she was in near-constant pain. [*Id*. at 116.] To cope with the pain, Willis takes Tramadol. [*Id*. at 117.] Further, Willis testified that she can shop for groceries, although she is sometimes anxious while doing so. [*Id*. at 120, 122.] She also attends her son's basketball and football games, if she feels up to it. [*Id*. at 131.] Willis has a history of alcohol abuse but testified at the hearing that she had not drank alcohol during the three months leading up to the hearing. [*Id*. at 129.]

The ALJ issued a decision denying benefits. The ALJ found that Willis met the insured status requirements of the Social Security Act and that Willis did not engage in substantial gainful activity since September 14, 2012, her amended alleged onset date. [A.R. at 42.] The ALJ next concluded that Willis has the following severe impairments: lumbago, status post left total knee replacement, status post remote right foot fracture, bipolar disorder, personality disorder, and alcohol dependence in early remission. [*Id*.] At the next step in the process, the ALJ determined that Willis's impairments or

combination of impairments do not meet or medically equal the severity of one of the listed impairments. [*Id*. at 42-44.] As required, the ALJ next found that Willis has the following residual functional capacity:

> [She can] perform sedentary work . . . except that the claimant can occasionally climb ramps and stairs, she can occasionally balance, stoop and crouch, and she can tolerate occasional; exposure to extreme cold, but she can never kneel or crawl she can never climb ladders, ropes or scaffolds, she can never operate foot controls, she should avoid all exposure to unprotected heights and dangerous moving mechanical parts, and she is limited to work that can be performed on even terrain and nonslippery surfaces. She is further limited to simple, routine, and repetitive tasks involving only simple work related decisions and routine workplace changes, work tasks which do not involve directing others, abstract thought or planning, work tasks which can be performed at a flexible pace, i.e., no quotas, involving only occasional contact with coworkers and supervisors, no tandem tasks or teamwork, and no direct interaction with the public.

[*Id*. at 44.] At the final stage in the five step process, the ALJ concluded that considering Willis's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Willis can perform, and therefore Willis was not disabled. [*Id*. at 48-49.]

## **Discussion**

For starters, it's important to keep in mind that judicial review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by substantial evidence, then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 474 (7th Cir. 2009).

First, Willis argues the ALJ erred by ignoring Willis's reliance on a walker in rendering his RFC and hypothetical to the vocational expert. [DE 15 at 10-11.] Willis argues that this error is harmful because it eliminates some of the jobs the vocational expert testified Willis could perform. [*Id.* at 11.] But the ALJ *did* consider her use of a walker and cited substantial evidence to determine that she didn't need it. For example, the ALJ noted that "Dr. Inabnit observed that the claimant used a walker, but that she was also ambulatory without a walker." [A.R. at 46.] Willis says that "overestimates" Inabnit's statement. [DE 15 at 11.] I don't see how. Here's what Dr. Inabnit said in his treatment notes: "[Willis] could walk in the office without the walker, left that out of the room today. She did okay with that in ambulation." [A.R. at 696, 704.] He went on to state that Willis's gait "was slow and purposeful without the walker in the office." [*Id.* at 697.] As the ALJ pointed out, Dr. Inabnit also noted that Willis has normal motor strength and sensory functioning throughout. [*Id.* at 46] The ALJ in no way overstated or otherwise misrepresented what Dr. Inabnit said in his treatment notes—notes that were taken just a few weeks after the hearing before the ALJ.

What's more, Willis has failed to introduce any evidence that contradicts Inabnit's observations. Indeed, Willis's own testimony at the hearing belies the claim that she now makes on appeal; she testified that she was not using a cane or walker at the time of the hearing. [*Id*. at 116.] She was asked point blank whether she uses "any canes or assistive devices" and she responded "Just the TENS unit." [*Id*. at 115-16.] Willis also testified at the hearing that she can walk three blocks before she needs assistance. [*Id*. at 115, 128.] Willis's citation to a hospital record suggesting she struggled to walk without a walker is not persuasive, as it was produced about a year *prior* to Dr. Inabnit's observation, which the ALJ chose to credit. [*Id*. at 600-601.] In any event, "[a]n ALJ is not required to address every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). In sum, the ALJ did not err by failing to include Willis's use of a walker in his hypothetical to the vocational expert because there was substantial evidence the walker was unnecessary.

Second, Willis argues that the ALJ erred by failing to address obesity at any step of his analysis. [DE 15 at 12-13.] There is a good reason for this. There is simply nothing in the medical records to suggest that Willis's obesity amounts to a severe impairment. At any rate, the ALJ satisfied his burden by discussing physical examinations that documented Willis's weight. [A.R. at 45-47.] While the doctors in these evaluations noted Willis's weight and how she was gaining weight, none diagnosed her as obese; the furthest any of them went was Nurse Practitioner Susan

Grace, who told Willis to eat healthy and stay active – hardly ground breaking advice from a medical professional. [*Id*. at 404.] Further, Willis fails to articulate *how* her obesity would aggravate her underlying condition, something she would be required to do to obtain a remand. *Hernandez v. Astrue*, 277 F. App'x 617, 623-624 (affirming ALJ's decision when the claimant did not clearly articulate how obesity would aggravate her underlying conditions and the ALJ discussed medical records reflecting the claimant's obesity).

Nothing in *Salaiz v. Colvin*, No. 1:15-cv-206-TLS, 2016 WL 4238496, at *5 (N.D. Ind. Aug. 11, 2006), cited to by Willis, commands a different result. [DE 15 at 12-13.] In *Salaiz* the ALJ listed obesity as a severe impairment at Step 2 of his analysis, but then failed to consider obesity in the subsequent steps of his analysis. [DE 20 at 14-15.] That's an obvious error. Here, the ALJ, following the lead of the doctors that examined Willis, decided that Willis's obesity did not need to be discussed or listed as a severe impairment. The implication of Willis's argument is that the ALJ is obligated to scour hundreds of pages of medical evidence to make diagnoses that Willis' own doctors failed to make. That is not neither required nor sensible.

Third, Willis argues that the ALJ erred in his credibility evaluation of Willis's statements at the hearing. [DE 15 at 14-16.] Willis testified at the hearing that her being bipolar would affect her ability to work. [A.R. at 125.] Yet she told Dr. Durak that were it not for her knee problems she would probably still be working as a CNA. [*Id.* at 498-499.] The ALJ pointed to this inconsistency when making his credibility finding. [*Id.* at

7

47.] The ALJ also pointed to other things that Willis said at the hearing as not being particularly credible and cited to earlier statements that Willis made Dr. Durak and Dr. Inabnit as reasons for his credibility findings. For example, the ALJ cited to several statements by Willis to doctors Inabnit and Durak indicating that she could perform household chores, *id.* at 47; she told Dr. Durak her medications were "very effective," *id.* at 497; she told Dr. Durak that could do light cooking, cleaning, and shopping independently, *id.* 501; and she told Dr. Inabnit that she drove a car, did some minimal housework, laundry, and shopping, and could lift 15-20 pounds, *id.* at 691. The ALJ pointed all of this out in finding that Willis's hearing testimony wasn't entirely credible. [*Id.* at 47.] A review of the hearing transcript makes clear what the ALJ was really getting at: during her testimony, Willis persistently described her day-to-day existence as much more dire than how she previously described it to the doctors. The ALJ essentially found that Willis's puffing was an effort to exaggerate her problems and this led the ALJ to find her not entirely credible.

Willis argues that the evidence "negates" the ALJ's credibility analysis. [DE 15 at 16]. First, Willis cites her comment to Dr. Durak that she would lie down after getting her son ready for school, but before doing household chores. [*Id*. at 15.] Second, Willis cites statements from her mother, indicating that Willis spends part of her day sleeping, watching television, and doing light chores. [*Id*. at 14-15.] It is true that there was evidence going both ways. That's hardly surprising. In the end, that is why we have ALJs. They are there to weigh the conflicting evidence. Perhaps if I were sitting in the

8

hearing, I would have made findings that are different from those of the ALJ. But that is a far cry from saying that the ALJ's credibility findings are unsupported. They are not. My role simply is to determine whether the ALJ's conclusions are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. And they are. The ALJ's conclusion that the testimony of Willis and her mother are not entirely credible is supported by substantial evidence.

Finally, I am unpersuaded by Willis's citation to *Roddy v. Astrue*, 705 F.3d 631 (7th Cir. 2013), which bears no resemblance to this case. In *Roddy*, the Court rejected the ALJ's finding that the claimant could work a sedentary, full-time job because the claimant had to lie down three to four times for an hour every day. *Roddy*, 705 F.3d at 639. Willis does not cite to any evidence suggesting that her symptoms were comparable to those of the claimant in *Roddy*, so this court does not have the same basis to reject the ALJ's credibility analysis as the Court did in *Roddy*. In short, the ALJ relied on substantial evidence in making his credibility evaluations and I am, therefore, required to uphold them. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (affirming ALJ's decision where ALJ considered, but did not overemphasize, claimant's ability to perform daily activities).

Finally, Willis argues that the ALJ's Step Five analysis is not supported by substantial evidence. [DE 15 at 16.] Willis makes a few challenges to the ALJ's Step Five Analysis. First, Willis restates her argument that the ALJ should have questioned

9

the vocational expert about the walker, which I addressed above. [*Id*. at 17.] Second, Willis argues that two of the jobs that the ALJ stated Willis was able to perform require physical activities that the ALJ himself excluded in his RFC; for example, the ALJ mentioned the job of "product stuffer," but that job requires use of a foot pedal, something the ALJ ruled out in his RFC. [*Id*.] Indeed, the Commissioner concedes that Willis might not be able to perform the "product stuffer" job because it requires use of a foot pedal. [DE 20 at 20.] Further, Willis challenges the ALJ's position that she could perform the job of "garment industry assembler" because that position requires meeting quotas, something the ALJ ruled out in his RFC. [*Id*.] However, the ALJ's questioning of the vocational expert reflected that Willis could not meet quotas and the vocational expert testified that an individual who could not meet "minute-by-minute or hour-by-hour quotas" could still perform the job. [A.R. at 137-138.] Thus, the ALJ elicited evidence from the vocational expert that Willis can perform the "garment industry assembler" job. Assuming that Willis cannot perform the "product stuffer" job, but can perform the other jobs mentioned by the vocational expert, there are still, according to the vocational expert's testimony, 145,000 jobs nationally and 1,950 jobs regionally that Willis can perform. [*Id*. at 49, 136-137.] And it is "well-established that 1,000 is a significant number" of jobs. *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). Third, Willis argues that the ALJ erroneously failed to inquire into the basis for the vocational expert's job numbers, noting that the Seventh Circuit has expressed "profound doubt" about the accuracy of job statistics that vocational experts present at Social Security

hearings. *See Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014). While it is correct that the Seventh Circuit has questioned the accuracy of job statistics from vocational experts, the Seventh Circuit has not overruled its precedent holding that the ALJ is entitled to accept a vocational expert's testimony where "no one questions the vocational expert's foundation or reasoning." *Donahue v. Barnhart,* 279 F.3d 441, 446 (7th Cir. 2006). Willis was represented at the hearing by an attorney, who was given the opportunity to question the vocational expert; while Willis's attorney asked questions, she did not question the source of the vocational expert's numbers. [A.R. at 139-140.] If Willis wanted to raise doubts about the vocational expert's job numbers, which suggest she can perform 145,000 jobs nationally, her attorney should have raised this issue at the hearing. *Cf. Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008) (Unlike here, the claimant's counsel in *Overman* questioned the vocational expert and elicited statements that seriously called into question the reliability of the expert's bottom line conclusions.).

## Conclusion

In sum, the ALJ's conclusion that Willis was not disabled during the relevant time period is supported by the evidence highlighted in his opinion. And even if reasonable minds could differ concerning whether Willis was disabled, I must defer to the ALJ's decision so long as it is adequately supported, as it is in this case. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Sherry A. Willis's application for a period of disability and disability insurance benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: August 1, 2017.

    s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**